# In the United States District Court for the Southern District of Georgia Waycross Division

JODY L. PONSELL,

    Plaintiff,

    vs.

RANDY F. ROYAL, in his individual and official capacity as Sheriff, Office of the Sheriff for Ware County, Georgia; REBECCA WILLIAMS in her individual and official capacity as Deputy Sheriff, Office of the Sheriff for Ware County, Georgia; and WARE COUNTY, GEORGIA,

    Defendants.

CV 514-042

## ORDER

After Plaintiff Jody L. Ponsell was relieved of his duties as Captain of Ware County Sheriff's Office's criminal investigation division, he filed a complaint alleging federal claims under 42 U.S.C. § 1983 and other state law claims. See Dkt. no. 1. Presently before the Court are Defendants' Motion to Dismiss Plaintiff's complaint in its entirety except for certain claims against Defendant Royal (Dkt. no. 10), Motion for

AO 72A
(Rev. 8/82)

Sanctions (Dkt. no. 21), and Motion for Summary Judgment (Dkt. no. 22). At this juncture, only the Motion to Dismiss is ripe for adjudication. For reasons stated below, Defendants' Motion to Dismiss is **GRANTED in part and DENIED in part**; it is granted as to all claims against Defendants Williams and Ware County; it is also granted as to all claims contested in the motion to dismiss against Defendant Royal except for the claim of intentional infliction of emotional distress against Defendant Royal in his individual capacity, for which the motion to dismiss is denied.

### FACTUAL BACKGROUND

Plaintiff was hired as a detective by former Sheriff Ronnie McQuaig on April 8, 2008. When McQuaig did not run for reelection, Defendant Royal successfully ran for the position of Sheriff of Ware County, Georgia. As Sheriff, Defendant Royal promoted Plaintiff twice, first to Lieutenant and then to Captain of the criminal investigation division at the Ware County Sheriff's Office. Dkt. no. 1, ¶¶ 20-28.

During Plaintiff's tenure he alleges that he repeatedly observed several violations of criminal law, civil law, and office policies. Plaintiff reported these offenses in writing to Defendant Royal. Id. at ¶¶ 29-30.

Specifically, Plaintiff alleges that Defendant Royal allowed Sheriff County employees subordinate to Plaintiff's rank

to ignore Plaintiff's authority with impunity; Defendant Williams, a detective under Plaintiff's supervision in the criminal investigation division, had stolen county funds; Defendant Williams ignored Plaintiff's authority and disregarded his direct orders; Defendant Williams "illegally and surreptitiously" recorded employees of the Office of the Sheriff in a secure area; Defendant Royal "essentially" granted Defendant Williams immunity from prosecution from the alleged theft of county funds; and Defendants Royal and Williams "conspired" to retaliate against Plaintiff. Plaintiff alleges that he reported these offenses in writing to Defendant Royal, and that Defendant Royal "did nothing." Id. at ¶¶ 29-51.

In addition to his reports on Defendant Williams, Plaintiff claims he witnessed other office misconduct tolerated or committed by Defendant Royal, such as the suppression of an investigation into a Waycross Police Department officer who knowingly enrolled a sex offender into the local high school; maintaining a policy of not fingerprinting certain arrested individuals so that they are not saddled with a criminal record; a policy of falsifying records to cover-up the fingerprinting policy; an officer's theft of a rifle held as evidence at the Sherriff's Office; and a general policy of covering up crimes committed by Sheriff's officers to avoid negative media attention. Id. at ¶ 52.

Plaintiff claims that "after this long, sordid history of Defendant Royal's acquiescence to the continuing criminality and civil and policy abuses among Defendant Royal's employees, Mr. Ponsell requested in writing, on or about March 25, 2013, reassignment to another division where Mr. Ponsell believed less corruption existed." Id. at ¶ 53.

But instead of being reassigned, Plaintiff was put on administrative leave with pay. At a later meeting, Defendant Royal terminated Plaintiff's employment with the Sheriff's Office. Plaintiff alleges that Defendant Royal knowingly and incorrectly misrepresented the letter requesting a transfer as a letter of resignation. Later, when applying for unemployment, Plaintiff alleges that Defendant Royal "manufactured evidence" to show that Plaintiff had not in fact asked to be transferred, but instead had sent a letter of resignation. Defendant Ware County allegedly appealed Plaintiff's initial award of unemployment benefits, but failed to appear at the in-person hearing for those benefits. The unemployment benefits were ultimately granted. Id. at ¶¶ 55-60.

At all times, Plaintiff alleges that the Defendants were acting under the color of state law. Plaintiff alleges that "as a result of Defendants' retaliatory actions . . . Plaintiff has suffered monetary loss, emotional pain and suffering,

inconvenience, mental anguish, and loss of enjoyment of life."
Id. at ¶¶ 65, 159.

## PROCEDURAL BACKGROUND

In his Complaint, Plaintiff alleges violations of his First Amendment freedom of speech rights (Counts I and V) and his Fourteenth Amendment right to due process (Counts III and VI) under 42 U.S.C. § 1983. He also brings state law claims for violation of his right to free speech (Count II) and his right to due process (Count IV) under the Georgia Constitution; violations of Ga. Code Ann. section 45-1-4 (Georgia whistleblower act) (Count VII); negligent retention (Count VIII); and intentional infliction of emotional distress (Count IX).

In his response to Defendants' motion to dismiss (Dkt. no. 17-1), Plaintiff withdrew his federal due process claims (Counts III and VI); his state law claims against all Defendants in their official capacities (excepting the whistleblower claim against Defendant Royal in his official capacity); his whistleblower claims against Defendants Ware County, Williams, and Royal in his individual capacity; and his Georgia Constitution claims (Counts II and IV). Additionally, Defendants do not challenge Plaintiff's First Amendment claims against Defendant Royal in his individual capacity or the Georgia

AO 72A
(Rev. 8/82)

whistleblower claim against Defendant Royal in his official capacity in the present motion.

Thus, the remaining claims for the Court to consider in the present motion are the First Amendment claims against Defendants Ware County, Williams in her individual and official capacity, and Royal in his official capacity (Counts I and V); negligent retention against Defendants Williams and Royal, in their individual capacities (Count VIII); and intentional infliction of emotional distress against Defendants Williams and Royal, in their individual capacities (Count IX).

## LEGAL STANDARD

When ruling on a motion to dismiss brought pursuant to Rule 12(b)(6), a district court must accept as true the facts as set forth in the complaint and draw all reasonable inferences in the plaintiff's favor. Randall v. Scott, 610 F.3d 701, 705 (11th Cir. 2010). Although a complaint need not contain detailed factual allegations, it must contain sufficient factual material "to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). At a minimum, a complaint should "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." Fin. Sec. Assurance, Inc. v. Stephens, Inc., 500 F.3d 1276, 1282-83 (11th

AO 72A
(Rev. 8/82)

Cir. 2007) (per curiam) (quoting Roe v. Aware Woman Ctr. for Choice, Inc., 253 F.3d 678, 683 (11th Cir. 2001)).

## DISCUSSION

### I. First Amendment Claims

In light of his withdrawals, Plaintiff's only remaining federal claim is a First Amendment retaliation claim against Defendants Royal in his official capacity, Williams in her individual and official capacity, and Ware County.

#### a. Eleventh Amendment Immunity

Defendants Williams and Royal claim that they are protected from suit in their official capacity by the Eleventh Amendment. The Eleventh Amendment prohibits the "Judicial power of the United States" from reaching "any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State." U.S. Const. amend. XI. The Supreme Court interprets this language to also prevent suits against a state brought by its own citizens. Kimel v. Fla. Bd. Of Regents, 528 U.S. 62, 73 (2000) ("[F]or over a century now, we have made clear that the Constitution does not provide for federal jurisdiction over suits against nonconsenting States."). The State itself need not be named in a suit to receive Eleventh Amendment immunity—the immunity attaches to any agent or instrumentality acting as an "arm of the state." See Manders v. Lee, 338 F.3d 1304, 1308 (11th Cir. 2003) (en banc).

Manders set forth four factors courts must weigh in making the "arm of the state" determination: "(1) how state law defines the entity; (2) what degree of control the State maintains over the entity; (3) where the entity derives its funds; and (4) who is responsible for judgments against the entity." Id. at 1309. The Eleventh Circuit recently applied these factors to determine that a sheriff in Georgia acts as an "arm of the State" when exercising his power to hire and fire deputies. Pellitteri v. Prine, -- F.3d --, 2015 WL 151112, at *1 (11th Cir. Jan. 13, 2015).[1] The Eleventh Circuit then reversed the district court's denial of the sheriff's motion to dismiss. Id. at *5.

In light of Pellitteri's holding that Georgia sheriffs operate as arms of the state when they make hiring and firing decisions, this Court holds that Defendant Royal was likewise acting as an arm of the state when he terminated Plaintiff.[2]

However, this holding does not end the Eleventh Amendment analysis here. Under the doctrine of Ex Parte Young, an individual may sue a state (or an arm of the state) despite the

---

[1] In applying these four factors, the Eleventh Circuit noted that its prior unpublished decision in Keene v. Prine, 477 F. App'x 575 (11th Cir. 2012) "is inconsistent with this Court's published precedent." Pellitteri, 2015 WL 151112, at *2. Here, Plaintiff understandably relied heavily on Keene in arguing that employees of the Ware County Sheriff's office, in their official capacities, are not arms of the state. Dkt. no. 17-1, pp. 1-5. However, the Eleventh Circuit's subsequent published ruling in Pellitteri is binding on this Court.

[2] Pellitteri relied exclusively on Georgia statutory and case law in applying Manders's four factors to a Georgia sheriff's hiring and firing decisions. See generally Pellitteri, 2015 WL 151112. The Court has no reason to believe that the Manders analysis would come out any different when applied to Defendant Royal's hiring and firing decisions in this case.

AO 72A
(Rev. 8/82)

Eleventh Amendment where the claimant requests the court to grant "prospective injunctive relief to prevent a continuing violation of federal law." Green v. Mansour, 474 U.S. 64, 68 (1985) (citing Ex parte Young, 209 U.S. 123, 155-56 (1908)). The Eleventh Circuit has "determined previously that requests for reinstatement [of employment] constitute prospective injunctive relief that fall within the scope of the Ex Parte Young exception and, thus, are not barred by the Eleventh Amendment." Lane v. Cent. Ala. Cmty. Coll., 772 F.3d 1349, 1351 (11th Cir. 2014).

Here, Plaintiff has requested "reinstatement" of his various employment benefits that would have accrued "up until his wrongful termination and would have accrued had he not been terminated . . ." Dkt. no. 1, p. 30-31. The request is one for damages, not for the injunctive relief of being reinstated to his former position as Captain of the criminal investigation division. This request for back pay and front pay is neither a request for prospective *injunctive* relief nor a request for reinstatement of Plaintiff's employment. Thus, Plaintiff's federal claims against the Defendants in their official capacities are barred by the Eleventh Amendment, and are therefore **DISMISSED**.

### b. Defendant Williams In Her Individual Capacity

Plaintiff also brings a claim against Defendant Williams in her individual capacity for conspiracy to retaliate against Plaintiff in violation of the First Amendment.

"To state a claim for conspiracy, a complaint must contain more than just vague and conclusory accusations." Allen v. Secretary, 578 F. App'x 836, 840 (11th Cir. 2014) (citing Twombly, 550 U.S. 544)). "It is not enough to simply aver in the complaint that a conspiracy existed. Instead, the complaint must contain enough factual matter (taken as true) to suggest tha[t] an illegal agreement was made." Id. (quotations, citations, and editorial marks removed). The grounds to infer an agreement need only be plausible, not probable, and the plausibility standard "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal agreement." Id. (quoting Twombly, 550 U.S. at 556).

> A district court considering a motion to dismiss shall begin by identifying conclusory allegations that are not entitled to an assumption of truth—legal conclusions must be supported by factual allegations. The district court should assume, on a case-by-case basis, that well pleaded factual allegations are true, and then determine whether they plausibly give rise to an entitlement to relief.

Randall v. Scott, 610 F.3d 701, 709-10 (11th Cir. 2010). Thus, as to the First Amendment complaint against Defendant Williams, the Court will (1) identify the conclusory allegations in the

complaint; and (2) consider whether the factual allegations, taken as true, plausibly give rise to an entitlement to relief.

First, Defendants are correct that Plaintiff's complaint is replete with conclusory allegations. For example, the statement "Defendant Royal and Defendant Williams conspired to retaliate against Mr. Ponsell" is plainly conclusory. Dkt. no. 1, ¶ 41. So are the statements "Defendants Royal and Williams worked together to engineer Mr. Ponsell's demise with[in] the Office of the Sheriff," (¶ 43), and "This partnership by Defendants Royal and Williams had a goal of removing Mr. Ponsell from the Office of the Sheriff," (¶ 46). Certainly, bald allegations that Defendants were in cahoots to get Plaintiff fired, without more, cannot be taken as true on their face.

However, conclusory allegations are not verboten in complaints, especially when paired with factual allegations that plausibly support those legal conclusions. Here, Plaintiff's factual allegations include: Defendant Williams, Plaintiff's subordinate, had stolen county funds, (¶ 35); Defendant Williams ignored Plaintiff's authority, (¶ 37); Defendant Williams illegally recorded conversations in the office, (¶ 47); Plaintiff reported this conduct to Defendant Royal, who did nothing, (¶¶ 36, 38, 39, 44, 48-50); Defendant Royal thereby "essentially granted Detective Williams immunity from prosecution for crimes and adverse actions for disregarding Mr.

AO 72A
(Rev. 8/82)

Ponsell's lawful authority," (¶ 40); and "Defendant Royal allowed a multitude of criminal, civil, and policy transgressions to flourish in the Office of the Sheriff," (¶ 51). In short, Plaintiff's factual allegations, which must be taken as true, are that Defendant Williams committed certain crimes or misdeeds in the office, Plaintiff reported this conduct to Defendant Royal, Defendant Royal did nothing about it, and Plaintiff was subsequently fired.

Therefore, the question for the Court is whether these factual allegations support a claim for relief. In _Allen v. Secretary_, the Eleventh Circuit applied the pleading standards in _Twombly_ to determine whether a claim of conspiracy to retaliate in violation of the First Amendment could survive a motion to dismiss for failure to state a claim on which relief may be granted. In _Allen_, a state prisoner alleged that correctional officers had conspired to retaliate against him, in violation of his First Amendment rights, by filing false disciplinary reports against him after he had filed grievances against two of the several defendant-correctional officers. _Allen_, 578 F. App'x at 838. The prisoner alleged that the officers were drinking and hunting buddies, they were all a part of the "gang-like" Department of Corrections Brotherhood, they had announced "for all to hear" that they would protect one another "no matter what it takes," and that one of the officers

AO 72A
(Rev. 8/82)

had told the prisoner that another officer's husband specifically asked the officer to have the prisoner placed in solitary confinement in retaliation for filing a grievance against his wife, a correctional officer. Id. at 841. The Eleventh Circuit concluded that the prisoner's case should not have been dismissed, because "[b]ased on these fact-specific allegations, we believe Allen's complaint contains sufficient facts to suggest plausibly that Defendants entered into an illegal agreement." Id.

Conversely, here there are no *factual* allegations of a conspiracy between Defendants Williams and Royal to terminate Plaintiff. While Plaintiff states this *conclusion* several times, he does not plead facts that connect his reports on Defendant Williams's behavior and Defendant Royal's indifference to an illicit agreement between the two to have him fired for making the reports. Unlike the pleadings in Allen, there is no allegation here that Defendants Royal and Williams ever met and conspired to remove Plaintiff from the office or that they shared a special relationship with one another. At most, the allegation that Plaintiff reported Defendant Williams's criminal conduct to Royal could allow one to speculate that she probably held a grudge against Plaintiff and, perhaps, sought to have him fired; but the "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S.

AO 72A
(Rev. 8/82)

555 (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004) ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action.")).

Because Plaintiff failed to state a claim for conspiracy against Defendant Williams, his First Amendment claim against Defendant Williams is **DISMISSED**.

### a. Ware County

Defendants also argue that Plaintiff's claims against Defendant Ware County fail because it did not cause the retaliatory termination.

The Supreme Court in <u>Monell v. Department of Social Services of City of New York</u> held that a local government is not vicariously liable under § 1983 for injuries inflicted solely by its employees or agents. 436 U.S. 658, 694 (1978). Rather, a county is only liable when the county's "official policy" causes a constitutional violation. <u>Grech v. Clayton County, Ga.</u>, 335 F.3d 1326, 1329 (11th Cir. 2003). To show a county's official policy for § 1983 purposes, a plaintiff must identify either "(1) an officially promulgated county policy or (2) an unofficial custom or practice of the county shown through the repeated acts of a final policymaker for the county." <u>Id.</u> (citing <u>Monell</u>, 436 U.S. at 690-91).

14

Here, Plaintiff's complaint does not allege either an official policy or an unofficial practice on the part of Ware County. The only connection the complaint alleges between Ware County and the underlying events is that Ware County allegedly appealed Plaintiff's award of unemployment benefits, but then failed to appear at the unemployment hearing, thereby affirming the award to Plaintiff. According to Plaintiff, "Defendant County affirmatively participated in Defendant Royal's fraud upon the Department of Labor by appealing the award based on manufactured evidence." Dkt. no. 1, p. 11.

A very generous reading of Plaintiff's Complaint could possibly attribute an allegation that Ware County is somehow liable for Defendants' Williams and Royal's alleged retaliatory termination of Plaintiff for his speech. But even if this allegation against Ware County was clearly stated in the Complaint, Monell would preclude the County's liability for the termination. See Monell, 436 U.S. at 694 ("We conclude, therefore, that a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents.").

Additionally, Georgia law makes clear that a sheriff's office operates independently from the county in which it operates. "Sheriffs alone hire and fire their deputies." Manders v. Lee, 338 F.3d 1304, 1311 (11th Cir. 2003) (citing Ga. Code Ann. § 15-16-23). And while the State may require counties to

AO 72A
(Rev. 8/82)

fund the sheriff's office, "Georgia's Constitution precludes the county from exercising any authority over the sheriff . . ." Id. (citing Ga. Const. art. IX, § 2, ¶ 1(c)(1)). Thus, because Ware County does not have any power over Defendant Royal's hiring decisions, it cannot be said to have a custom or practice of permitting constitutional violations through the Sheriff's Office's hiring practices. See Pembaur v. City of Cincinnati, 475 U.S. 469, 479 (1986) ("The 'official policy' requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible."); cf. Hart v. Edwards, 2009 WL 691069, at *11 (M.D. Ga. 2009) (granting summary judgment in a § 1983 action in favor of defendant county that was not in a position to exercise control over sheriff's employment decisions).

In his Response to Defendants' Motion to Dismiss, Plaintiff cites Pembaur v. Cincinnati in support of his claim that Ware County is liable for Plaintiff's termination. See Dkt. no. 17-1, p. 11. Plaintiff offers virtually no explanation as to how Pembaur establishes Ware County's liability in this case. In Pembaur, the Supreme Court held that "it is plain that municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." Pembaur, 475 U.S.

16

at 480. There is no allegation in the complaint that one of Ware County's municipal policymakers made the decision to terminate Plaintiff. At most, there is an inference that Ware County temporarily perpetuated Defendant Royal's alleged fraud by appealing Plaintiff's award of unemployment benefits. But the complaint never attaches this decision by "the County" to a municipal policymaker or even states how this appeal would give rise to a federal claim. Pembaur, then, is inapposite, and will not save Plaintiff's § 1983 claims against Ware County from dismissal.

## II. State Law Claims

In light of Plaintiff's withdrawal of certain claims, the only state law claims that remain are the negligent retention and intentional infliction of emotional distress claims against Defendants Royal and Williams in their individual capacities. Because the survival of the intentional infliction of emotional distress claims against Defendant Williams may impact the disposition of the negligent retention claim against Defendant Royal, the Court will address the intentional infliction of emotional distress claims first. Both defendants have asserted Georgia's qualified immunity defense as to the state law claims.

### a. Intentional Infliction of Emotional Distress

Plaintiff brings a claim for intentional infliction of emotional distress against Defendant Royal and "Defendants,"

17

generally. Presumably, this includes both Defendants Royal and Williams in their individual capacities; although Defendant Williams is never mentioned by name in Count IX, that Count incorporates by reference the factual allegations stated earlier in the complaint.

In Georgia, to prevail on a claim of intentional infliction of emotional distress, a plaintiff must show that:

> (1) the conduct giving rise to the claim was intentional or reckless; (2) the conduct was extreme and outrageous; (3) the conduct caused emotional distress; and (4) the emotional distress was severe. The defendant's conduct must be so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Whether a claim rises to the requisite level of outrageousness and egregiousness to sustain a claim for intentional infliction of emotional distress is a question of law.

Steed v. Fed. Nat. Mort. Corp., 689 S.E.2d 843, 851-52 (Ga. Ct. App. 2009).

It is unclear from Plaintiff's complaint what conduct by Defendant Williams supports his claim against her for intentional infliction of emotional distress. In his response in opposition to Defendants' motion to dismiss, Plaintiff includes a laundry list of allegations that he argues support his claim.[3] Only one of these pertains to Defendant Williams, and it

---

[3] The response, of course, is not the complaint, and cannot be relied upon to deny Defendants' motion to dismiss. However, the complaint is so deficient as to Plaintiff's intentional infliction of emotional distress claim against Defendant Williams that the Court must look to it to decide, at least, where to begin.

AO 72A
(Rev. 8/82)

references her "total disregard of Mr. Ponsell's authority."
Dkt. no. 17-7, p. 9. This complaint in Plaintiff's response must
reference the allegations in Plaintiff's complaint regarding
Defendant Williams's insubordination. See, e.g., Dkt. no. 1,
¶ 37 ("Defendant Williams ignored Mr. Ponsell's authority,
disregarding Mr. Ponsell's direct orders."). Additionally, while
the complaint never makes this allegation crystal-clear, it
could be interpreted to assert an intentional infliction of
emotional distress claim against Defendant Williams for her
alleged involvement in a conspiracy to have Plaintiff fired.

The bare allegation that Defendant Williams's
insubordination is intentional, extreme, and outrageous such
that it causes Plaintiff severe emotional distress is patently
deficient to survive Defendants' motion to dismiss. Perhaps
Plaintiff means to refer to specific instances where Defendant
Williams's manner of defiance was itself outrageous. However, a
charge of "insubordination" generally is neither outrageous
enough to support a claim for intentional infliction of
emotional distress nor specific enough to place Defendants on
notice of the specific conduct Plaintiff complains of. See
Twombly, 550 U.S. at 570 (holding that pleading does "not
require heightened fact pleading of specifics, but only enough
facts to state a claim to relief that is plausible on its
face."); Phinazee v. Interstate Nationalease, Inc., 514 S.E.2d

AO 72A
(Rev. 8/82)

843, 845 (Ga. Ct. App. 1999) ("Whether a claim rises to the requisite level of outrageousness and egregiousness to sustain a claim for intentional infliction of emotional distress is a question of law."). Therefore, the complaint does not support a claim for intentional infliction of emotional distress against Defendant Williams for her alleged insubordination.

And to the extent that the complaint may contain an allegation of intentional infliction of emotional distress against Defendant Williams based on her alleged participation in a First Amendment retaliation conspiracy, that claim also fails. As noted above, Plaintiff failed to allege sufficient facts to support the underlying conspiracy claim against Defendant Williams, and any attendant intentional infliction of emotional distress claim against Williams based on this alleged conspiracy must also fail. Thus, because both potential theories of an intentional infliction of emotional distress claim against Defendant Williams fail, this claim against Defendant Williams must be **DISMISSED**.

As to Defendant Royal, though, the allegations in the complaint clearly allege that Defendant Royal's allegedly false statement that Plaintiff wished to resign, along with his subsequent termination, caused Plaintiff severe emotional distress. As Georgia courts have recognized, "an employer's threats and retaliatory activities satisfy the requisite element

20

of outrageousness supportive of a claim for intentional infliction of emotional distress." Yarbray v. S. Bell. Tel. & Tel. Co., 409 S.E.2d 835, 838 (Ga. 1991). In a factually similar case to this one, the Eleventh Circuit applied this reasoning when affirming a district court's denial a defendant company's motion to dismiss when the plaintiff had alleged that he suffered threats, humiliation, supervisory indifference, false accusations, and was ultimately fired after he reported to his supervisors a safety hazard at his workplace. Harris v. Proctor & Gamble Cellulose Co., 73 F.3d 321, 323-25 (11th Cir. 1996). Thus, Plaintiff has alleged facts sufficient to support his claim of intentional infliction of emotional distress against Defendant Royal in his individual capacity.

Defendant Royal argues that, regardless of whether or not Plaintiff has adequately stated this claim, he is nevertheless entitled to dismissal because of his qualified immunity from suit in his individual capacity. In Georgia, public officials are immune from personal liability for discretionary acts taken within the scope of their official authority "and done without willfulness, malice, or corruption." Murphy v. Bajjani, 647 S.E.2d 54, 56 (Ga. 2007) (quoting Cameron v. Lang, 549 S.E.2d 341, 344 (Ga. 2001)). "Malice," as used in the Georgia Constitution's provision providing for official qualified immunity, has been construed to denote "express malice or malice

21

in fact." See Ga. Const. Art. I, § II, ¶ IX(d); Phillips v.
Hanse, 637 S.E.2d 11, 12-13 (Ga. 2006). "Actual malice requires
a deliberate intention to do wrong." Phillips, 637 S.E.2d at 13.
Mere ill will or "rancorous personal feelings" towards a
plaintiff will not rise to the level of actual malice when
paired with a lawful act—the official must have acted with a
"deliberate intention to do a wrongful act." Id. (citing Merrow
v. Hawkins, 467 S.E.2d 336, 337 (Ga. 1996)).

Here, Plaintiff has plainly alleged that Royal misconstrued
his letter requesting reassignment so that he may terminate
Plaintiff in retaliation for raising awareness of the Sheriff's
tolerance for criminal activity among his deputies. See, e.g.,
Dkt. no. 7, ¶ 149. Terminating a Sheriff's deputy in retaliation
for such speech is a wrongful act in violation of the First
Amendment, and Plaintiff has clearly alleged this retaliation,
and its attendant claim for intentional infliction of emotional
distress, against Defendant Royal in his individual capacity.
Thus, Defendants' motion to dismiss Plaintiff's claim for
intentional infliction of emotional distress against Defendant
Royal in his individual capacity is **DENIED.**

### b. Negligent Retention

Plaintiff brings a negligent retention claim against
Defendants Williams and Royal in their individual capacities for
Royal's negligent hiring and retention of Williams. Plaintiff

AO 72A
(Rev. 8/82)

claims that if Defendant Royal "had terminated Defendant Williams with the first reports of her lawlessness, Mr. Ponsell would not have suffered the harm he has suffered in this case." Dkt. no. 1, ¶ 146.

Naturally, Defendant Williams cannot be held liable for her own negligent hiring and retention, and so this claim against her must be **DISMISSED**.

A charge of negligent hiring and retention is more appropriately brought against Defendant Royal, who made the hiring and firing decisions at the Ware County Sheriff's Office. "[A] defendant employer has a duty to exercise ordinary care not to hire or retain an employee the employer knew or should have known posed a risk of harm to others where it is reasonably foreseeable from the employee's 'tendencies' or propensities that the employee could cause the type of harm sustained by the plaintiff." Munroe v. Univ. Health Servs., Inc., 596 S.E.2d 604, 606 (Ga. 2004). In Munroe, the Georgia Supreme Court rejected the plaintiff's "but for" argument that the defendant was liable for the negligent hiring or retention of the errant employee because this employment provided the employee with the access or opportunity to injure the plaintiff. Id.

Here, Plaintiff alleges that Defendants Williams and Royal's conspiracy is what terminated his employment and caused his injuries. However, the "tendencies or propensities" that

Plaintiff reported to Defendant Royal were Plaintiff Williams's tendencies to steal, act insubordinately, and surreptitiously record others' conversations. In essence, Plaintiff reported to Defendant Royal that Defendant Williams was a thieving, unruly snoop, not that she was conspiratorial. As such, Defendant Royal was not aware of the specific "tendencies or propensities" of Defendant Royal that allegedly contributed to Plaintiff's termination, and Defendant Royal cannot be liable for negligent retention under these circumstances.

Additionally, to the extent that the complaint can be interpreted to contain a latent claim of intentional infliction of emotional distress against Defendant Williams for her insubordination, that claim could itself serve as the basis of a negligent retention claim against Defendant Royal.[4] After all, Plaintiff *does* allege that Defendant Royal knew of Defendant Williams's insubordination. However, as discussed above in part II.a, the complaint fails to adequately allege a claim of intentional infliction of emotional distress against Defendant Williams, and such an injury thus cannot be the basis for a negligent retention claim against Defendant Royal.

---

[4] The Court reiterates, though, that the complaint makes no explicit connection between Defendant Williams's conduct and Plaintiff's intentional infliction of emotional distress claims. Even the inference of these claims only arises from an extremely forgiving interpretation of Plaintiff's complaint.

Finally, Plaintiff's complaint essentially makes the "but for" argument refuted in <u>Munroe</u>: "Had Defendant Royal terminated Defendant Williams with the first reports of her lawlessness, Mr. Ponsell would not have suffered the harm he has suffered in this case." Dkt. no. 1, ¶ 146. Plaintiff's complaint fundamentally misconstrues the claim of negligent retention, and thus fails to adequately state that claim such that relief may be granted. Plaintiff's negligent hiring and retention claim, then, is **DISMISSED**.

## CONCLUSION

Plaintiff's complaint fails to allege facts that would support some of the claims he seeks against Defendants. However, in addition to those claims that Defendants have conceded will survive a motion to dismiss, Plaintiff has alleged facts sufficient to support a claim of intentional infliction of emotional distress against Defendant Royal in his individual capacity. Defendants' Motion to Dismiss (Dkt. no. 10) is **GRANTED in part and DENIED in part**—it is granted as to all claims addressed above except for the claim of intentional infliction of emotional distress against Defendant Royal in his individual capacity. The only claims that will proceed are the First Amendment retaliation claim, the Georgia whistleblower claim, and the intentional infliction of emotional distress claim

against Defendant Royal in his individual capacity. Defendants Williams and Ware County are hereby **DISMISSED** from this action.

**SO ORDERED**, this 17TH day of March, 2015.

LISA GODBEY WOOD, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

AO 72A
(Rev. 8/82)