# In the United States District Court
# for the Southern District of Georgia
# Waycross Division

JODY L. PONSELL,

    Plaintiff,

v.

RANDY F. ROYAL, in his individual and
official capacity as Sheriff, Office of the
Sheriff for Ware County, Georgia; REBECCA
WILLIAMS in her individual and official
capacity as Deputy Sheriff, Office of the
Sheriff for Ware County, Georgia; and WARE
COUNTY, GEORGIA,

    Defendants.

CV 514-042

## ORDER

After Plaintiff Jody L. Ponsell was relieved of his duties as Captain of Ware County Sheriff's Office's Criminal Investigation Division, he filed a Complaint alleging federal claims under 42 U.S.C. § 1983 and other state law claims. Of the several claims he alleged in his Compliant, only three remain: a claim under Georgia's whistleblower statute against Defendant Royal in his official capacity, and claims of First Amendment retaliation and intentional infliction of emotional distress against Defendant Randy Royal in his individual capacity. Defendant has filed a Motion for Summary Judgment. Dkt. no. 22. Because Plaintiff has failed to produce evidence that would create a material question of fact as to his First Amendment retaliation claim, Defendant's motion is **GRANTED** as to that Count. The remaining state-law claims for violation of the Georgia Whistleblower Act against Defendant in his official capacity

and intentional infliction of emotional distress against Defendant in his individual capacity are **DISMISSED WITHOUT PREJUDICE** for lack of supplemental jurisdiction.

## FACTUAL BACKGROUND

In considering Defendant's Motion for Summary Judgment, the Court views all of the evidence in the light most favorable to the Plaintiff and draws all reasonable inferences in his favor. Johnson v. Booker T. Washington Broad. Serv., Inc., 234 F.3d 501, 507 (11th Cir. 2000).

Plaintiff Jody Ponsell was the direct supervisor of the Sheriff's Criminal Investigation Division (CID) at the Ware County Sheriff's Office. Dkt. no. 22-6 ("Ponsell Dep.") 6:15-21. Defendant Royal was the Sheriff and Plaintiff's supervisor for much of Plaintiff's tenure at the Sheriff's office. Id.

During his time at the Sheriff's office, Plaintiff says he observed "several violations of criminal law, civil law, and sheriff office policies by employees of Defendant Royal." Dkt. no. 1 ("Compl.") ¶ 29. He reported these offenses to Defendant. Id. ¶ 30. Specifically, Plaintiff identified five violations of law or policy that he reported to Defendant:

- The theft of a firearm out of the evidence locker by a deputy. Ponsell Dep. 8:22-25.
- The failure of deputies to fingerprint arrestees. Id. 9:6-8.
- Deputy Williams, one of Plaintiff's subordinates, surreptitiously recorded other deputies' conversations in the workplace. Id. 9:10-11, Dkt. no. 22-4 ("Royal Aff.") ¶¶ 6-9.
- The failure to properly investigate the enrollment of a registered sex offender in a public school. Ponsell Dep. 9:23-24.
- The Failure to properly investigate an alleged theft of government funds by Deputy Williams. Id. 10:1-7.

*The Various Complaints*

Plaintiff alleges that he was terminated for complaining about these various violations.

First, Plaintiff claims that a detective at the Sheriff's office took a weapon out of the evidence room and converted it to his personal use. Id. 78:15-18. This happened in 2009 before Defendant Royal became Sheriff. Royal Aff. ¶ 4. The gun had been turned over to the Sheriff's office from a citizen who did not want the weapon in his home. A deputy in the office then reached an agreement with the citizen to purchase the weapon. Id. Defendant Royal approached Plaintiff and said he was concerned about this arrangement. Ponsell Dep. 85:6-9. He asked Plaintiff to investigate the matter. Id. 84:20-21. Plaintiff investigated the issue and had the gun returned to the citizen. Id. 86:1-87:1. Plaintiff then summarized his investigation with a written report to Defendant. Id. 88:9-12.

Next, Plaintiff claims that he complained about some incidents at the Sheriff's office where arrestees were not fingerprinted when booked at the Ware County Jail. Id. 53:17-54:9. Plaintiff's deposition suggests that he never complained to Defendant Royal about this issue, Id. 71:1-3, and Plaintiff has not pointed to any evidence that he reported this incident to Sheriff Royal or any other superior. At most, it appears that Plaintiff simply conducted an informal investigation on this matter on his own initiative, and most of his knowledge about it is hearsay. See generally id., pp. 66-72.

Plaintiff also says he complained about an alleged theft of government funds by Deputy Williams. Deputy Williams allegedly stole "PEPI" funds, which stands for "purchase evidence purchase information," and is intended to be used to pay confidential informants or buy contraband during undercover operations. Id. 14:11-17. Plaintiff had asked Deputy Williams to "zero out" her PEPI account by either returning the money or accounting for her expenditures. Id. 15:21-16:5. Deputy Williams could not initially produce the money. Later that day, though,

she delivered the money. Id. 18:19-19:6. Plaintiff believed Deputy Williams had lied about "losing" the money and then "finding" it after she left the office. Id. A few days later, Plaintiff reported this incident to Defendant Royal. Id. 19:12-19. Plaintiff made this complaint in September of 2010. Id. at 16:4-8.

Regarding the enrollment of a sex offender at a public high school, Plaintiff states that he made Defendant Royal aware of this incident and Defendant Royal said "I will handle it." From there, Plaintiff has no information about how the issue was resolved. Id. 49:17-21. Plaintiff made this complaint in April of 2012. Royal Aff. ¶ 15.

Finally, Plaintiff says he complained that Deputy Williams, his subordinate, surreptitiously recorded officers' conversations at the Sheriff's office. Plaintiff claims he was contacted by a sergeant who "had found a recorder in CID and that it was actually recording at the time he found it." Ponsell Dep. 38:15-17. Plaintiff relayed this information to Defendant Royal. Id. Defendant Royal stated that he would investigate the matter, and that was the extent of Plaintiff's involvement with this incident while he was still employed at the Sheriff's office. Id. 39:20-22. Plaintiff made this complaint in the final weeks of his employment, in April or May of 2013. Ponsell Dep. 36:22-38:13.

*Plaintiff's Termination*

Plaintiff argues that after "this long, sordid history of Defendant Royal's acquiescence to the continuing criminality and civil and policy abuses" among his employees, Plaintiff requested reassignment. Dkt. no. 34, pp. 7-8. His letter to Defendant Royal, with the subject line reading "Request for reassignment," states:

> I am respectfully requesting that I be relieved of the duty and responsibilities of Captain of Detectives.

AO 72A
(Rev. 8/82)

4

> The continued decay of the Detective Division's working environment and the numerous unresolved personnel issues that have unfolded over time have needlessly placed a physical and emotional burden on me. While my health is of great concern to me, what is of paramount importance to me is the burden that has been callously placed on my family, which they do not deserve. It has further inflicted deep pain upon my moral and ethical convictions.
>
> It has become clear over time that by not quickly and effectively addressing and resolving these issues the cohesion and trust that is needed to maintain a unified division has eroded.
>
> As a result, in good conscience, I feel I can no longer perform the duties of the position.
>
> I sincerely hope that you will find a way to put the knowledge, training and experience I have acquired over the last twenty-nine years to good use in another way to support you and the Ware County Sheriff's Office.

Dkt. no. 22-6, p. 195.

> Plaintiff later received a written response from Defendant Royal. That letter states:
>
> On Tuesday, April 30, 2013, you delivered to me a letter in which you requested that "I relieve you of the duty and responsibilities of your position of Captain of Detectives."
>
> Commanding the Criminal Investigations Division is the position that I specifically hired you to fill when I was elected as the Sheriff of Ware County in 2009 and then again in 2013. As a result of your letter, I placed you on administrative leave with pay until I could explore other possible options.
>
> Your resignation from the position that you were hired for leaves me no alternative. I have no other position available at this time in which your skills and abilities may be utilized. It is for this reason that you are hereby released, effective May 24, 2013, from your employment at the Ware County Sheriff's Office.

Id. p. 207. Plaintiff testified that during his employment, he was never demoted, reprimanded, or otherwise subjected to an adverse employment action while working for Sheriff Royal. Ponsell Dep. 114:7-15.

## PROCEDURAL BACKGROUND

Plaintiff's original Complaint alleged nine separate claims, including: First Amendment freedom of speech violations under 42 U.S.C. § 1983(Counts I and V); Fourteenth Amendment due process violations, also under § 1983 (Counts III and VI); free speech (Count II) and due process (Count IV) violations under the Georgia Constitution; violations of the Georgia Whistleblower Act, Ga. Code Ann. § 45-1-4 (Count VII); negligent retention (Count VIII); and intentional infliction of emotional distress (Count IX).

Defendant filed a partial motion to dismiss, challenging all claims except the First Amendment claim against Defendant Royal in his individual capacity and the Georgia Whistleblower Act claim against Defendant Royal in his official capacity. Dkt. no. 10. In his response to Defendants' motion to dismiss (Dkt. no. 17-1), Plaintiff withdrew his federal due process claims (Counts III and VI); his state law claims against all Defendants in their official capacities (excepting the whistleblower claim against Defendant Royal in his official capacity); his whistleblower claims against Defendants Ware County, Williams, and Royal in his individual capacity; and his Georgia Constitution claims (Counts II and IV). The Court then granted in part Defendants' partial motion to dismiss, and dismissed all claims against Defendants Williams and Ware County, along with all of Plaintiff's claims against Defendant Royal except for the First Amendment retaliation claim against Defendant Royal in his individual capacity, the Georgia Whistleblower Act claim against Defendant Royal in his official capacity, and the intentional infliction of emotional distress claim against Defendant Royal in his individual capacity. Dkt. no. 30, pp. 25-26. These three claims against Defendant Royal, then, are all that remain for consideration on Defendant's Motion for Summary Judgment.

## LEGAL STANDARD

Summary judgment is required where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." FindWhat Investor Grp. v. FindWhat.com, 658 F.3d 1282, 1307 (11th Cir. 2011) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A dispute over such a fact is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. In making this determination, the court is to view all of the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. Johnson, 234 F.3d at 507.

The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). To satisfy this burden, the movant must show the court that there is an absence of evidence to support the nonmoving party's case. Id. at 325. If the moving party discharges this burden, the burden shifts to the nonmovant to go beyond the pleadings and present affirmative evidence to show that a genuine issue of fact does exist. Anderson, 477 U.S. at 257.

## DISCUSSION

### I. The First Amendment Retaliation Claim

Plaintiff claims that Defendant Royal violated his First Amendment right to free speech when he relieved Plaintiff of his duties in alleged retaliation for Plaintiff's complaints about corruption and illegal activities in the Sheriff's office.

The Speech Clause of the First Amendment states, "Congress shall make no law . . . abridging the freedom of speech." U.S. Const. amend. I. The First Amendment is incorporated

AO 72A
(Rev. 8/82)

7

through the Due Process Clause of the Fourteenth Amendment and applies to state and municipal governments. Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1268 (11th Cir. 2004).

"A state employer can not retaliate against a state employee for engaging in speech constitutionally protected under the First Amendment." Stanley v. City of Dalton, 219 F.3d 1280, 1288 (11th Cir. 2000). Nevertheless, the law recognizes that the state has an interest as an employer in regulating its employee's speech, and thus attempts to balance the employee's and the state's competing interests. Id. In striking this balance, the Eleventh Circuit has provided the following framework in assessing First Amendment retaliation claims:

> To prevail under this analysis, an employee must show that: (1) the speech involved a matter of public concern; (2) the employee's free speech interests outweighed the employer's interest in effective and efficient fulfillment of its responsibilities; and (3) the speech played a substantial part in the adverse employment action.

Cook v. Gwinnett Cnty. Sch. Dist., 414 F.3d 1313, 1318 (11th Cir. 2005). If the employee satisfies these three steps, "the burden shifts to the employer to show by a preponderance of the evidence that it would have made the same decision even in the absence of the protected speech." Id. The first two steps are questions of law; the final two steps are questions of fact. Id.

As to the first step, a "public employee's speech involves a matter of public concern if it can 'be fairly considered as relating to any matter of political, social, or other concern to the community.'" Id. (quoting Connick v. Myers, 461 U.S. 138, 146 (1983)). To make this determination, the court must consider the "content, form, and context of a given statement, as revealed by the whole record." Boyce v. Andrew, 510 F.3d 1333, 1343 (11th Cir. 2007). The Supreme Court has held that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." Garcetti v.

Ceballos, 547 U.S. 410, 421 (2006); see also Ramsey v. Bd. of Regents of Univ. Sys. of Ga., 543 F. App'x 966, 968 (11th Cir. 2013). Nor does the fact that information "of general interest to the public" transpires in a public office make that information a matter of public concern—so holding would make every remark and "every criticism directed at a public official" the "seed of a constitutional case." Boyce, 510 F.3d at 1344. Thus, an employee's personal grievance does not become a matter of public concern merely because the public may have an interest in how public institutions are run. Id. "The relevant inquiry is not whether the public would be interested in the topic of the speech at issue but rather is whether the purpose of the plaintiff's speech was to raise issues of public concern." Id.

Here, the statements for which Plaintiff says he was fired are not matters of public concern. As an initial matter, Plaintiff testified that he made these reports in his capacity as a sworn law enforcement officer. Ponsell Dep. 13:7-23. A review of the record shows that his purpose for bringing his superior's attention to these violations of law or policies was to fulfill his role as a department head in reporting to the sheriff. When he made these complaints, he was speaking as the captain of the criminal investigation unit. He was not seeking to raise issues of public concern generally.

An examination of each complaint Plaintiff submitted to Defendant confirms that these are not matters of public concern. First, it is clear that Plaintiff was acting in his official capacity when he reported the allegedly stolen gun to Defendant. In fact, it was Defendant who asked Plaintiff to conduct the investigation. Ponsell Dep. 84:19-85:12. Plaintiff then presented the findings of the investigation to Defendant in a file, which he summarized in conversation. Id. 88:9-89:23. These statements, then, were made pursuant to Plaintiff's official duties, and cannot be the basis of a First Amendment retaliation claim.

Second, the record reflects that Plaintiff's purported speech against the office's practice of not fingerprinting some arrestees cannot be the basis for a retaliation claim. Plaintiff has not shown that he actually complained about this practice. As such, the Court cannot determine whether or not his speech on this topic was a matter of public concern, or whether it actually has any causal connection to his termination.

Third, Plaintiff's "complaint" about the discovery of a recording device in the CID was simply him relaying to his supervising officer what his subordinate officer had told him. Id. 37:20-39:22. Ponsell's speech on this matter consisted entirely of him passing information up the chain of command—there is no indication that he reported the surreptitious recording to raise an issue of public concern.

Fourth, Plaintiff has made no argument as to how his comments regarding a sex offender who allegedly enrolled in a high school is a matter of public concern outside of Plaintiff's official duties. See Dkt. no. 34 (Plaintiff's response brief, in which he fails to respond to Defendant's arguments that this incident is not a matter of public concern). Registration of sex offenders is a routine duty of the Sheriff's office. See Ga. Code Ann. § 42-1-12(f). Plaintiff's report of this incident to Defendant, then, concerned the performance of their official duties. Plaintiff has failed to present any argument or indication as to how the content, context, or form of his speech on this topic indicates that it is a matter of public concern.

Finally, Plaintiff reported the alleged theft of Deputy Williams's PEPI funds to Defendant because Plaintiff was Williams's supervisor and, in that capacity, had asked her to account for her PEPI money. When she could not, he reported this to Defendant. Plaintiff did not recommend any particular course of action. Plaintiff says that he simply discussed the matter with Defendant and asked if Defendant wanted him to conduct a criminal investigation.

AO 72A
(Rev. 8/82)

10

Defendant allegedly said that he would have to think about how to handle it before discussing it further with Plaintiff. Ponsell Dep. 25:17-24. This conversation, as Plaintiff relates it, appears to be nothing more than two supervising officers discussing how to discipline a subordinate. Plaintiff's speech, then, was made in his official capacity. While he states in his briefing on the issue that "The public has an interest in the public law enforcement agency officers stealing public funds," his speech on this matter to Defendant was intended to report a subordinate's violation of policy, not to raise a matter of public concern.

Plaintiff has not met his burden in showing how the "content, form, and context" of any of these statements, "as revealed by the whole record," show that he was raising issues of public concern rather than speaking in his capacity as a sheriff's officer. See Boyce v. Andrew, 510 F.3d 1333 (11th Cir. 2007). Instead, his brief on this issue consists of nothing more than conclusory statements that each topic is "a matter of public concern." See Dkt. no. 34, p. 11. He then argues that his termination must have been the result of these complaints because he had had no prior disciplinary actions. This argument on causation simply ignores the fact that he had submitted a letter to Defendant asking to be relieved of his current duties. But even if the record showed that these complaints were the sole impetus for Plaintiff's termination, the termination would still be unreviewable by this Court because the complaints were not made to raise issues of public concern:

> When employee expression cannot be fairly considered as relating to any matter of political, social, or other concern to the community, government officials should enjoy wide latitude in managing their offices, without intrusive oversight by the judiciary in the name of the First Amendment. Perhaps the government employer's dismissal of the worker may not be fair, but ordinary dismissals from government service which violate no fixed tenure or applicable statute or regulation are not subject to judicial review even if the reasons for the dismissal are alleged to be mistaken or unreasonable.

Connick, 461 U.S. at 146.

Plaintiff's complaints did not raise matters of public concern for purposes of the First Amendment retaliation analysis. Summary judgment is proper on Plaintiff's First Amendment claims.

## II. The State-Law Claims

Aside from Plaintiff's First Amendment retaliation claim, the only other claims that remain are Plaintiff's state-law claims for a violation of the Georgia Whistleblower Act against Defendant in his official capacity[1] and for intentional infliction of emotional distress against Defendant in his individual capacity. Because no federal cause of action remains, Plaintiff's state law claims are dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3). 28 U.S.C. § 1367(c)(3) (allowing a court to decline to exercise supplemental jurisdiction over a claim over which it has supplemental jurisdiction if "the district court has dismissed all claims over which it has original jurisdiction."); see also Raney v. Allstate Ins. Co., 370 F.3d 1086, 1089 (11th Cir. 2004) ("We have encouraged district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial.").

## CONCLUSION

The record evidence produced no material questions of fact as to Plaintiff's claims for First Amendment violations and summary judgment is **GRANTED** as to those claims. Plaintiff's claims for Georgia Whsitleblower Act violations against Defendant Royal in his official capacity and intentional infliction of emotional distress against Defendant Royal in his individual capacity

---

[1] The Court concluded its prior Order on Defendant's Motion to Dismiss with an admittedly ambiguous sentence suggesting that the remaining Georgia Whistleblower Act claim remained against Defendant only in his *individual*, rather than official capacity. See Dkt. no. 30, pp. 25-26. In his Motion for Summary Judgment, Defendant correctly argues that he cannot be liable for a violation of the GWA in his individual capacity. Dkt. no. 35, p. 10; see also Skolweck v. Garden City, Ga., No. 4:12-cv-227, 2012 WL 6016844, *2 (S.D. Ga. Dec. 3, 2012) ("Simply put, there is no cause of action against individuals under the GWA . . . ."). However, Defendant did not move to dismiss Plaintiff's GWA claim against Defendant in his individual capacity, and the Court's Order on Defendant's Motion to Dismiss did not intend to dismiss that claim. See Dkt. no. 10-1, pp. 2-3 ("In his official capacity, the state law claim under O.C.G.A. § 45-1-4 should proceed at this stage (though it may also fail upon summary judgment

AO 72A
(Rev. 8/82)

12

are **DISMISSED WITHOUT PREJUDICE**, subject to any right to pursue these claims in the appropriate state forum. The Clerk of Court is directed to enter the appropriate judgment.

**SO ORDERED**, this 3RD day of September, 2015.

LISA GODBEY WOOD, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA